# HURWITZ *v.* STATE

[No. 4, October Term, 1952.]

580

*Decided November 11, 1952.*

*Motion for rehearing, filed December 10, 1952, denied December 12, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*William J. O'Donnell* and *T. Barton Harrington* for the appellant.

*Ambrose T. Hartman, Special Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for the appellee.

MARKELL, C. J., delivered the opinion of the Court.

This is an appeal from judgment on conviction of conspiracy to violate the lottery laws and of violations of the lottery laws. Most of appellant's contentions are directed to the charge of conspiracy in the first count of the indictment. That count charges that appellant, Morris Garonzik (or Garon) and Agnes Slipka "unlawfully conspired together and with certain other persons * * * unknown, unlawfully to violate the lottery laws of the State." Other counts charge specific violations of lottery laws by appellant, Garonzik and Slipka. Appellant was found guilty by the jury under the first and seven other counts, and was sentenced to seven years in the penitentiary and a fine of $2,000. On motion of appellant, this sentence was stricken out, and he was resentenced to five years in the penitentiary and a fine of $2,000. Though jointly indicted, appellant was tried alone. Garonzik and Slipka testified against him and under Article 27, section 438, of the Code of 1951, are exempt from punishment. After conviction of appellant the case against Garonzik and Slipka was entered "Stet".

Garonzik testified that Slipka had played numbers, that he gave appellant her name and address because she wanted to write numbers, that later when he would ask appellant how she was doing, appellant said all right. Before the instant indictment was filed, Slipka's house was raided and she was convicted of violation of lottery law and sentenced to not more than four months in the Reformatory for Women and a fine of $500.00. In the instant case she testified that at her trial she did not implicate appellant because she thought he would "take care of" her and she would "serve the time if

he would pay the fine"; that the fine was not paid, and after serving six weeks she was "brought into town" and her sentence and the fine were suspended; that at her own trial, she had falsely testified that she was a player, not a writer of numbers, which she actually was. Though appellant did not pay her fine, he testified that he procured—and paid for—bail for her; her bail so testified. A police lieutenant testified that after arrest appellant told him he had told Slipka "to borrow the money [for her fine] from a loan company, and he would make the monthly payments"; Slipka so testified.

One of the alleged errors of which appellant complains is refusal to direct a verdict of not guilty on the ground that the only evidence against appellant was uncorroborated testimony of accomplices—and members of Slipka's family who admitted having testified falsely at her trial. Without elaborating the testimony beyond the above outline, it is clear that Slipka's circumstantially full testimony is amply corroborated by appellant's statement to the police lieutenant and by her bail's testimony.

By motion to dismiss (the equivalent of a demurrer) appellant attacked the sufficiency of the conspiracy count in the indictment (*a*) as failing to state an offense, (*b*) as alleging not facts but a conclusion of law, and (*c*) as charging only necessary concert of action and plurality of agents to effect the object of the "conspirary", whereas such concert and plurality do not constitute an indictable conspiracy.

It must be admitted that ordinarily the words "unlawfully violate the lottery laws of the State" do not so definitely describe acts done as to charge an offense; they even seem too indefinite to charge acts contemplated as the object of a conspiracy. In *United States v. Cruikshank*, 92 U. S. 542, 559, 23 L. Ed. 588, the court, by Chief Justice Waite said, "In Maine, it is an offense for two or more to conspire with intent unlawfully and wickedly to commit any crime punishable by imprisonment in the State prison (*State v. Roberts*);

but we think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been 'unlawfully and wickedly to commit each, every, all and singular the crimes punishable by imprisonment in the State prison'. All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defense by motion to quash, demurrer, or plea; and the court, that it may determine whether the facts will sustain the indictment." However, in Maryland, in case of criminal conspiracy the form of indictment reflects the nature of the crime of conspiracy, as defined and explained 130 years ago in the opinion of this court, by Judge Buchanan, in *State v. Buchanan,* 5 H. & J. 317. For present purposes the outstanding characteristics of the common law crime of conspiracy are *(1)* that (unlike the federal general conspiracy statute) the crime is complete in the conspiracy without any overt act, and *(2)* that (like a conspiracy to defraud the United States) a criminal conspiracy may consist of a conspiracy to do things which are not themselves criminal if done by one person. After a review of the English authorities over a period of 400 years, illustrating these two characteristics, the opinion in *State v. Buchanan* reached the conclusion that, "And such is the character of conspiracy, so ramified is it in its nature, the object and tendency of it being that, from which it derives its criminality, that it would be exceedingly difficult to give a single specific definition of the offense. But by a course of decisions running through a space of more than four hundred years, from the reign of Edward III, to the 59 of George III, without a single conflicting adjudication, these points are clearly settled:—" [stating nine points, including] "7th. For a bare conspiracy to cheat or defraud a third person, though the means of effecting it should not be determined

on at the time—as in *The King v. Gill & Henry.* * * *
And 9th. That in a prosecution for a conspiracy, it is
sufficient to state in the indictment, the conspiracy and
the object of it; and that the means by which it was
intended to be accomplished need not be set out, being
only matters of evidence to prove the charge, and not
the crime itself, and may be perfectly indifferent—as in
*The King v. Eccles,* and *The King v. Gill & Henry.*
From all which it results, that every conspiracy to do
an unlawful act, or to do a lawful act for an illegal,
fraudulent malicious or corrupt purpose, or for a pur-
pose which has a tendency to prejudice the public in
general, is at common law an indictable offense, though
nothing be done in execution of it, and no matter by
what means the conspiracy was intended to be effected;
which may be perfectly indifferent, and makes no in-
gredient of the crime, and therefore need not be stated
in the indictment." 5 H. & J. 351-352. In the course
of its review of the authorities this court said, "And
in *The King v. Eccles, 1 Leach's Crown Cases,* 274, the
indictment was for a conspiracy, by wrongful and in-
direct means, to impoverish one Booth, a tailor, and to
deprive and hinder him from following and exercising
his trade. In the first count in the indictment, the
object of the conspirators was alleged to have been ac-
complished, and in the second count the conspiracy only
was charged. It was not denied that the conspiracy
was an indictable offense, and the only objection on
the part of the defendant was, that the acts done to
impoverish Booth, ought to have been set out in the
indictment. But it was decided by the whole Court,
that it was sufficient to allege the conspiracy and the
object of it, the illegal combination being the gist of the
offence; and that it was not necessary to state the means,
by which the intended mischief was effected; for that
the offence did not consist in doing the acts by which
the end was accomplished, (for they might be perfectly
indifferent,) but in the conspiring with a view to effect
the intended mischief by any means; and by Buller,

Justice, that 'the means were only matters of evidence to prove the charge, and not the crime itself.' * * * And so in *The King v. Gill & Henry, 2 Barnwell & Alderson,* 204, the defendants were indicted and convicted of a conspiracy by divers false pretences, and subtle means and devices, to cheat several individuals by name. The prosecution in that case could not have been sustained, on the ground, as has been supposed, that it was for a conspiracy to commit an offense, indictable itself under the Statute 30 George II, against cheating by false pretences; for it is well settled, that in an indictment framed upon that statute, it is not enough to allege generally, that the cheat was effected by divers false pretences, &c. but the particular false pretences must be stated, that the party may know against what he is to defend himself, and that the Court may see that there is an indictable offense charged, as there are some pretences which are not within the statute. 2 T. R. 586; East's Crown Law, 837." 5 H. & J. 346, 349. Though in some respects these principles and rules seem to permit loosely drawn indictments, in other respects they express only the logic and common sense (and sometimes the sheer necessity) of the case. An indictment for robbery or larceny must ordinarily state the property stolen and the name (if kown) of the owner. If, however, pickpockets conspire to ply their trade in a public place it is manifestly impossible to state what property they conspire to steal or whom they conspire to rob.

In *Blum v. State,* 94 Md. 375, 378-379, 51 A. 26, 27, 56 L. R. A. 322, the indictment charged conspiracy "by means of divers false pretenses and representations, and other false and subtle means and devices to obtain and acquire unto themselves certain properties, monies, goods and chattels", of certain named corporations and persons and others unknown, and to cheat and defraud such persons and corporations. There was no demurrer to the indictment, but this court went out of its way to declare the indictment sufficient and to assert its

adherence to *State v. Buchanan.* "No demurrer having been interposed to the indictment, we would not be warranted in reviewing it here, but we deem it proper to say in order to avoid the creation of any doubt upon the question, that we regard the sufficiency of this indictment as established by the decision in *State v. Buchanan,* 5 H. & J. 317, where all the authorities were elaborately reviewed. No decisions in this State are more highly regarded than those rendered by Chief Justice Buchanan, and we think his opinion in that case is sustained by the weight of authority. In 6 *Amer. and Eng. Ency. of Law,* 2nd edition, note, p. 587, it is said that the law there laid down has been doubted in a few isolated instances, but that it has not been successfully assailed. It was denied in *State v. Rickey,* 9 N. J. L. 293, but this view was disapproved by Chief Justice Green in *State v. Norton,* 23 N. J. L. [33] 44, and by Chief Justice Beasley in *State v. Donaldson,* 32 N. J. L. 151; the former saying that the great weight of authority, the adjudged cases no less than the most approved elementary writers, sustain the law declared in *State v. Buchanan,* and the same view is held by the Courts if Connecticut, Illinois, New York, Pennsylvania and North Carolina. The case of *U. S. v. Cruikshank,* 92 U. S. 542, 23 L. Ed. 588, is not, in our opinion, in conflict with this view, the prosecution there being under the statute of the United States known as the Enforcement Act, and the indictment failing to specify in any of the counts what right or privilege granted or secured by the Constitution or laws of the United States, the traversers had conspired to defeat."

In *Lanasa v. State,* 109 Md. 602, 608-609, 71 A. 1058, 1060, this court sustained an indictment charging conspiracy "to wilfully and maliciously injure and destroy the property of Joseph DiGiorgio." After quoting *State v. Buchanan* the court said, "We cannot for a moment doubt that a combination and agreement between two or more persons wilfully and maliciously to injure and destroy the property of a third person is a completed

criminal conspiracy, and is the subject of an indict-
ment. Nor is it necessary to the completion of the
crime that the conspirators should determine in advance
what particular property should be injured or de-
stroyed. To hold that the law cannot interpose and
arrest by criminal procedure the malicious purposes
of the conspirators, unless they had agreed upon the
destruction of some particular property would strip it
of its most beneficient preventive powers and leave the
confererates at liberty to consummate their wicked pur-
poses. The law is not so impotent and ineffective. As
it is not essential to the completion of the offense that
any particular property should be destroyed, it is, there-
fore, not required that the object of the unexecuted
conspiracy should be set out with great particularity
and certainty in the indictment, because only such facts
need be stated as shall fairly and reasonably inform
the accused of the offense with which he is charged.
To require more in such a case would be to put an un-
necessary burden upon the State, and make it impossible
in many cases to secure the conviction of the guilty.
The position taken by the State, that in a prosecution
for such an offense as that charged in the third count,
the indictment need not particurarly describe the *prop-
erty*, the injury or destruction of which was the object
of the conspiracy, is well supported by the authorities."
[Citing authorities]. In *Gillespie v. State*, 147 Md. 45,
59-60, 127 A. 727, 732, the court sustained an indictment
for conspiracy to defraud. After quoting at length the
opinion in *State v. Buchanan*, the court said, "* * *
It has been argued with great force and ability that the
Buchanan case goes too far and that its statement of
the law is too broad and unsound and in conflict with
the best considered authority elsewhere, and should be
repudiated. Without pausing to comment on the justness
of that criticism, it is sufficient to say that the law as
stated in that case has been regarded as the settled law
of this State for more than one hundred years, and
during that long period has been repeatedly approved

by this Court, and for us now to set aside rules of law so long settled and established would be a wholly indefensible exercise of judicial power." If *State v. Buchanan* is to be repudiated, the law of criminal conspiracy narrowed or the requirements of indictments made more rigid, this much be done by the legislature.

The legislature has in fact simplified the form of indictments for conspiracy. By Chapter 87 of the Acts of 1945 (Code of 1951, Art. 27, sec. 48), it is provided that in any indictment for conspiracy it shall be sufficient to use a formula substantially to the following effect: "That A-B and C-D on the ......day of........19....., at the County (City) aforesaid unlawfully conspired together to murder X-Y (or other conspiracy here stating briefly the object of the conspiracy) against the peace," etc. This form of indictment for conspiracy to murder is briefer in statement of the object of the conspiracy than the statutory short form of indictment for murder. Code of 1951, Art. 27, sec. 710.

The legislature has also authorized abbreviated forms of indictments "for violation of the law prohibiting the drawing of lotteries or the selling of lottery tickets or other devices in the nature thereof". Code of 1951, Art. 27, sec. 696; Code of 1860, Art. 30, sec. 85. Section 435 of Article 27 of the Code of 1951 provides: "The courts shall construe the foregoing provisions relating to lotteries liberally * * *." Section 438 [*supra*] provides exemption from prosecution for any person compelled to testify against any person "who may have committed any of the offenses set forth under the subtitle 'Lotteries' ". The subtitle "Lotteries" comprises sections 423-438, inclusive. "The lottery laws of the State" in the instant indictment is identical in scope with sections 423-438 and with the laws referred to in section 696 and (in part) in section 435. The words "to violate the lottery laws of the State" have a promiscuous sound, but by comparison with sections 423-438, mean in substance, to participate in the conduct of a lottery, as broadly defined. Sections 423-438, with considerable tautology,

prohibit drawing a lottery, selling a lottery ticket (sec. 423), keeping or permitting to be used a house as a place for selling lottery tickets (secs. 427-428), bringing into the State or having in possession (sec. 429) lottery tickets,—in short, practically every incident of the conduct of a lottery except buying a lottery ticket. We express no opinion as to whether any provision of the lottery laws makes it a criminal offense for a customer to buy a lottery ticket.

On the authority of *State v. Buchanan* and later cases in this court, and in view of the evident meaning of "the lottery laws of the State", we hold that the first count of the instant indictment validly stated an offense and not a mere conclusion of law. In so holding we limit our decision to the case before us, and do not approve as a general formula for the statement of the object of a conspiracy, "to violate the......laws of the State."

In support of his motion to dismiss the indictment appellant also contends that a conspiracy to violate the lottery laws cannot be established by mere concert of action and plurality of agents which are necessary elements of the substantive offenses of violating the lottery laws. In *Wharton* on *Criminal Law,* (12th Edition), § 1604, it is said, *"Where concert is necessary to offense, conspiracy does not lie.* When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. As crimes to which concert is necessary (*i.e.,* which cannot take place without concert), we may mention dueling, bigamy, incest, and adultery; to the last of which the limitation here expressed has been specifically applied by authoritative American courts. * * * Of course when the offense is not consummated, and the conspiracy is one which by evil means a combination of persons is employed to effectuate, this combination is of itself indictable. And hence, persons combining to induce others to commit

bigamy, adultery, incest, or dueling, do not fall within this exception, and may be indicted for conspiracy." The principle invoked by appellant is "that where it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law [citing cases] or under the federal statute." [Citing cases, including a number in which "the conspiracy was * * * deemed criminal where it contemplated the cooperation of a greater number of parties than was necessary to the commission of the principal offense."] *Gebardi v. United States*, 287 U. S. 112, 122, 53 S. Ct. 35, 37, 77 L. Ed. 206. See also *Pinkerton v. United States*, 328 U. S. 640, 643, 66 S. Ct. 1180, 90 L. Ed. 1489. A sufficient answer to appellant's contention is that the indictment does not charge—and the evidence does not show—as an object of the conspiracy, and the lottery laws do not prohibit, as a substantive offense, any concert of action or plurality of agents which is essential to commission of a substantive offense. Unless by implication the lottery laws prohibit the purchase of a lottery ticket (by prohibition of sale or otherwise) there seems to be no violation of these laws which could not be committed by one person; this is notably true of possession, the broadest of all such offenses. The indictment does not charge, and the evidence does not show, that any of the conspirators were mere "players", *i.e.*, purchasers. In short, the instant case is ruled by the last two, and not by the first two, sentences quoted from Wharton, *supra*.

Appellant contends that his sentence of five years was "conditional, coercive, uncertain, indefinite, and constituted cruel and unusual punishment and was an abuse of discretion." The sentence of five years is well within the statutory maximum for conspiracy. We find nothing in the record which indicates any such abuse of discretion as would justify us in pronouncing this sentence "cruel and unusual punishment" and re-

viewing it as such. *Reid v. State,* 200 Md. 89, 88 A. 2d 478, 479, and cases cited.

When the original sentence of seven years was imposed, the judge made a statement, including *inter alia*: "I would say this. The amount of time this man does will rest somewhat with him. I am convinced he wasn't alone in this operation, and I would be willing to consider again my sentence if he is cooperative in exposing those who were in this operation with him. I say that to you as a sort of preface to what I am going to say." Appellant took exception to, and moved to strike out, the judgment and sentence on the grounds now urged against his resentence. Ten days after the first sentence, that sentence was stricken out and appellant was sentenced to five years and a fine of $2,000. At the time of resentencing, the judge said, *inter alia,* "That is about all I have to say in reference to this matter, except to say this, and let me impress it upon the accused, the defendant and his counsel and the State: This sentence that I impose today is not conditional in any respect whatsoever, nor is it predicated on any future event or events except such as may be set forth in a mandate of the Court of Appeals or in a court of some greater appellate jurisdiction."

If the original sentence had not been stricken out, we should have been compelled to hold it conditional and uncertain. *Heyward v. State,* 161 Md. 685, 697, 158 A. 897, 901. In the *Heyward* case a majority of the court agreed with such a contention in similar circumstances. However, a majority of the court also held that "in the absence of a motion to strike out the sentence or an exception taken to the Court's action", the question was not "presented in a shape to be reviewed." In the instant case appellant did move to strike out the first sentence and the court struck it out. When the first sentence was stricken out any error in imposing it went with it. When appellant was resentenced the judge did not repeat the objectionable statement made when the first sentence was imposed, but made a state-

ment directly to the contrary. The second sentence was substantially different from the first. There is nothing to indicate, and we cannot assume, that the judge meant more or less than he said in resentencing appellant. Appellant's objections to the second sentence cannot be sustained.

Appellant's remaining contention is that the court should have directed a verdict of not guilty on the ground that the State had granted immunity to the co-conspirators, Garonzik and Slipka, which action was tantamount to acquittal, and left appellant as the sole conspirator to be convicted. Again, appellant invokes a sound principle unsupported by facts. The evidence does not show any grant of immunity to Garonzik and Slipka, but it may be assumed as a matter of law that under the statute they automatically obtained immunity by testifying. As one person alone can not be guilty of a conspiracy, when all but one conspirator are acquitted, conviction of the remaining conspirator cannot stand. This does not mean that more than one conspirator must be convicted or prosecuted. Grant of immunity is not equivalent to acquittal. *Berry v. State,* 202 Ind. 294, 304-307, 165 N. E. 61, 173 N. E. 705, 72 A. L. R. 1177; *People v. Cohn,* 358 Ill. 326, 193 A. 150. Obviously, an entry of "stet" is not an acquittal.

*Judgment affirmed, with costs.*