949 A.2d 619

**Lawrence PRICE, Jr.**

v.

**STATE of Maryland.**

**No. 19 Sept. Term, 2007.**

Court of Appeals of Maryland.

June 9, 2008.

**12**

Michael R. Malloy, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, JJ., and JOHN C. ELDRIDGE, ALAN M. WILNER and DALE R. CATHELL, JJ. (Retired, Specially Assigned).

JOHN C. ELDRIDGE, Judge (Retired, Specially Assigned).

In this criminal case, we granted the defendant's petition for a writ of certiorari to re-examine the Maryland common law principle that inconsistent jury verdicts are normally permissible in criminal jury trials. We also granted the State's petition for a writ of certiorari which presented the issue of whether Maryland Code (2002), § 5–905 of the Criminal Law Article, authorizes the enhancement of sentences for multiple counts arising from the same criminal transaction.

I.

The State's evidence at the trial can be summarized briefly as follows. On November 20, 2002, Officer Richard Pollock and Sergeant William Harris, of the Baltimore City Police Department, were conducting surveillance at an apartment complex in Baltimore City located on Winchester Street. Known to the police officers as an area where drugs are "commonly sold," Officer Pollock and Sergeant Harris initially observed the apartment complex from their unmarked police car with binoculars. During this time, they witnessed several

people standing in a breezeway. Among the group in the breezeway were the defendant Price and Damien Tucker. The police officers saw about fifteen people, at different times, drive into the parking lot of the apartment complex and then approach the group in the breezeway. Upon meeting the group, the police officers witnessed Tucker receive cash and then each visitor, in turn, was handed a small object. Although Price was one of the individuals standing in the breezeway, the police officers did not see Price receive money, distribute anything, or engage in conduct that appeared to be drug dealing. Officer Pollock later testified that

"[i]n [the Winchester Apartment] area, there's a constant flow sometimes where there may be four or five people and then other people come up and they're communicating and talking with others even while sales are going on, but that doesn't necessarily mean that they're involved in the actual sales. They're just in the area as it is going on, as was the case that I thought with [Price]."

After observing a series of transactions, Officer Pollock and Sergeant Harris called for back up. Once additional police officers arrived, the officers exited their vehicle and approached the group in the breezeway. Seeing the officers approaching, everyone started to run. Officer Pollock followed Price and Tucker upstairs, and Tucker dropped a bag containing suspected controlled dangerous substances. Price and Tucker ran up to a third floor apartment, entered, and locked the door. Officer Pollock followed them, and waited outside the apartment until a backup officer arrived with a key to the apartment from the rental office. When the officers entered the apartment, they saw three men. The three men ran to a back room, where one of them jumped out of a window and ran. One officer apprehended Tucker, and Officer Pollock apprehended Price who threw a bag containing a handgun and U.S. currency to the ground.

Price was charged in 18 counts with various drug offenses and three firearms offenses. Three of the substantive drug charges fell into the category of a "drug trafficking crime" as defined in Maryland Code (2002), § 5–621 of the Criminal Law

Article. Those offenses were possession of heroin with intent to distribute it, possession of cocaine with intent to distribute it, and possession of marijuana with intent to distribute it. Nine of the counts charged that Price engaged in conspiracies with Tucker to distribute, or to possess with intent to distribute, or to possess heroin, cocaine, and marijuana. The three firearms offenses charged were (1) possessing a firearm during and in relation to a drug trafficking crime, under sufficient circumstances to constitute a nexus to the drug trafficking crime, in violation of § 5–621(b)(1) of the Criminal Law Article,[1] (2) possessing a regulated firearm having been convicted of a prior disqualifying felony, and (3) unlawfully carrying or transporting a handgun. The three firearms charges were based on the same incident of Price throwing to the ground a bag containing a handgun. Finally, Price was charged in three counts with simple possession of heroin, cocaine, and marijuana.

In his instructions to the jury, the trial judge told the jury that Price could only be convicted of possession of a firearm, during and in relation to a drug trafficking crime, under circumstances constituting a nexus to drug trafficking, if Price was also convicted of one of the drug trafficking crimes. The judge stated, in pertinent part, as follows:

"Ladies and gentlemen, the defendants are charged with the crime of possessing a firearm during and in relation to drug trafficking crimes. Possession with intent to distribute heroin, cocaine and marijuana, and conspiracy to possess with the intent to distribute heroin, cocaine and marijuana are drug trafficking crimes.

"You may not consider the crime of possessing a firearm during and in relation to a drug trafficking crime unless you found the defendant guilty of possession with the intent to

---

1. Section 5–621(b)(1) provides as follows:

"(b) *Prohibited.*—During and in relation to a drug trafficking crime, a person may not:

"(1) possess a firearm under sufficient circumstances to constitute a nexus to the drug trafficking crime...."

distribute heroin, cocaine and/or marijuana, conspiracy to distribute heroin, cocaine and/or marijuana, or conspiracy to possess with the intent of distributing heroin, cocaine and/or marijuana.

"If your verdict on those charges is not guilty you must find the defendant not guilty of possession of a firearm in the commission of a drug trafficking crime."

The jury acquitted Price of all drug trafficking charges. Thus, Price was found not guilty of possession with intent to distribute heroin, cocaine, and marijuana. Moreover, Price was found not guilty on all nine conspiracy counts. In addition, the jury acquitted Price on the two firearms counts charging possession of a regulated firearm having been convicted of a prior felony, and unlawfully carrying or transporting a handgun. Despite the trial judge's instructions and the acquittals, the jury found Price guilty of possession of a firearm during and in relation to a drug trafficking crime, under circumstances constituting a nexus to the drug trafficking crime. In addition, the jury convicted Price of simple possession of heroin, cocaine, and marijuana.

Price's attorney moved to strike the guilty verdict on the count charging possession of a firearm during and in relation to a drug trafficking crime, under § 5–621(b)(1) of the Criminal Law Article, on the ground that it was inconsistent with the acquittals. More specifically, defense counsel argued that commission of a drug trafficking crime is an "essential element" of the firearms offense under § 5–621(b)(1) of the Criminal Law Article, and that the jury had determined that Price did not commit a drug trafficking crime. The prosecuting attorney agreed that the guilty verdict on the § 5–621(b)(1) firearms count was inconsistent with the acquittals on the drug trafficking counts, but he argued that such inconsistent verdicts were permissible. After receiving legal memoranda from the parties, the trial judge denied the motion to strike on the ground that the cases in this Court, as well as some federal cases, have held that inconsistent verdicts are allowable. The trial judge, at the sentencing hearing, sentenced Price to twelve years imprisonment for the firearms

conviction under § 5–621(b)(1), consecutive to any other sentence, with the first five years to run without parole.

Pursuant to § 5–601 of the Criminal Law Article, Price's convictions for possession of heroin and cocaine each carried a maximum of four years imprisonment or a fine not exceeding $25,000 or both.[2] His possession of marijuana conviction subjected Price to a maximum sentence of one year in prison or a fine not exceeding $1000, or both. The trial court judge sentenced Price to the maximum imprisonment penalty for each of his possession convictions, and then doubled each sentence under the apparent authority of § 5–905 of the Criminal Law Article. Section 5–905(a) states that "[a] person convicted of a subsequent crime under this title is subject to ... a term of imprisonment twice that otherwise authorized...." Price had a previous conviction in November 2002 for possession with intent to distribute a controlled dangerous substance. As a result, Price was sentenced in this case to eight years imprisonment for possession of heroin, a consecutive eight years for possession of cocaine, and two years concurrent for the possession of marijuana.

Price appealed to the Court of Special Appeals, arguing, *inter alia,* that the Circuit Court erred when it refused to strike the conviction for possession of a firearm during and in relation to a drug trafficking crime because the conviction was

---

2. Maryland Code (2002) § 5–601 of the Criminal Law Article provides in relevant part:

" § **5–601. Possessing or administering controlled dangerous substance.**

(a) *In general.*—Except as otherwise provided in this title, a person may not:

(1) possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice; ....

\* \* \*

(c) *Penalty.*—(1) Except as provided in paragraph (2) of this subsection, a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 4 years or a fine not exceeding $25,000 or both.

(2) A person whose violation of this section involves the use or possession of marijuana is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both."

inconsistent with the acquittals on all counts charging drug trafficking crimes. In addition, Price argued that the trial court erred by doubling his prison sentences for all three of his drug possession convictions. Price contended that the trial judge misconstrued § 5–905 of the Criminal Law Article, and that doubling of sentences under that section is limited to "one count only." Section 5–905 provides in relevant part as follows:

**" § 5–905.   Repeat offenders.**

(a) *In general.*—A person convicted of a subsequent crime under this title is subject to:

(1) a term of imprisonment twice that otherwise authorized;

(2) twice the fine otherwise authorized; or

(3) both.

(b) *Rule of interpretation.*—For purposes of this section, a crime is considered a subsequent crime, if, before the conviction for the crime, the offender has ever been convicted of a crime under this title or under any law of the United States or of this or another state relating to other controlled dangerous substances.

\* \* \*

(d) *Sentencing in conjunction with other sentences.*—A sentence on a single count under this section may be imposed in conjunction with other sentences under this title."

In a reported opinion, *Price v. State,* 172 Md.App. 363, 388, 915 A.2d 432, 447 (2007), the Court of Special Appeals held that "inconsistent verdicts in a jury trial are generally tolerated under Maryland law." Accordingly, the intermediate appellate court upheld the guilty verdict on the firearms count. The Court of Special Appeals agreed however, with Price's contention that his sentences for the drug possession convictions were improperly doubled. The appellate court reasoned that the language in § 5–905 "is ambiguous in that it does not make clear whether an enhanced penalty can be imposed on each and every count arising out of a single course of conduct,

. . . or whether an enhanced penalty can only be imposed on one count of a multi-count charging document based on a single course of conduct." *Price v. State, supra,* 172 Md.App. at 387–388, 915 A.2d at 446. Based on this ambiguity, the appellate court applied the rule of lenity, holding that the enhanced penalty can be imposed on just one count. The Court of Special Appeals upheld the four guilty verdicts but vacated all of the sentences and remanded the case for resentencing.

As earlier indicated, Price filed a petition for a writ of certiorari regarding the inconsistent verdict question, and the State simultaneously filed a petition for a writ of certiorari with respect to the interpretation and application of § 5–905's sentence enhancement provisions. This Court granted both petitions, *Price v. State,* 399 Md. 33, 922 A.2d 573 (2007).

## II.

We shall first address the inconsistent verdict issue. In Maryland, the principles concerning inconsistent verdicts have judicially developed over time as part of this State's common law. Unlike several other jurisdictions, there are no Maryland statutes or promulgated procedural rules which relate to inconsistent verdicts generally or relate to specific types of inconsistent verdicts. Moreover, the Maryland common law principles governing inconsistent verdicts are themselves confusing and somewhat inconsistent.

## A.

"It has been the position of this Court that inconsistent verdicts in jury trials are permissible in criminal cases." *State v. Williams,* 397 Md. 172, 189, 916 A.2d 294, 305 (2007). *See, e.g., Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157, 1169 (1986) ("[I]nconsistent verdicts by a jury are normally tolerated"); *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358, 362 (1986) ("[C]onvictions based on inconsistent jury verdicts are tolerated"); *Mack v. State,* 300 Md. 583, 601, 479 A.2d 1344, 1352–1353 (1984) (Trial court's denial of relief "was consonant with

this Court's ... holdings that inconsistent verdicts can stand"); *Ford v. State*, 274 Md. 546, 337 A.2d 81 (1975) (A divided Court (4–2) upheld inconsistent verdicts in a criminal case where the defendant was convicted of using a handgun in the commission of a felony but was acquitted of committing the very same felony). The reasons usually given for the toleration of inconsistent verdicts are that the jury has an historic or a singular role in our justice system and "'that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity,'" *Galloway v. State*, 371 Md. 379, 408, 809 A.2d 653, 671 (2002). *See also Shell v. State*, *supra*, 307 Md. at 54, 512 A.2d at 362.

While toleration of inconsistent verdicts has sometimes been called the "normal" rule, this Court from time to time has recognized various limitations or exceptions to the rule.

■ Thus, as Judge Greene for the Court recently pointed out in *State v. Williams*, *supra*, 397 Md. at 189–190, 916 A.2d at 305, quoting in part from *State v. Anderson*, 320 Md. 17, 29, 575 A.2d 1227, 1233 (1990), "it is ... well settled in Maryland 'that inconsistent verdicts of guilty and not guilty, by a trial judge at a nonjury trial, are not ordinarily permitted.'" *See also, e.g., Wright v. State*, *supra*, 307 Md. at 576, 515 A.2d at 1169 ("[I]nconsistent verdicts by the court are not ordinarily permitted as a matter of Maryland common law"); *Shell v. State*, *supra*, 307 Md. at 55, 512 A.2d at 363 ("The *Ford* holding [tolerating inconsistent jury verdicts] does not justify inconsistent verdicts from the trial judge"); *Johnson v. State*, 238 Md. 528, 541–543, 209 A.2d 765, 771–772 (1965).

■ Moreover, in a criminal trial where, by agreement of the parties, some counts are submitted to the jury and some counts are submitted to the trial judge, and where the evidence underlying the counts is identical, the trial judge is precluded from rendering guilty verdicts on the counts submitted to the judge if such verdicts would be inconsistent with not guilty verdicts rendered by the jury. *See Galloway v. State*, *supra*, 371 Md. at 401, 809 A.2d at 667, where Judge Cathell for the Court emphasized that "the reasons why

inconsistent jury verdicts are tolerated simply do not apply when a judge is involved in rendering one of the inconsistent verdicts." *See also Wright v. State, supra,* 307 Md. at 576, 515 A.2d at 1169, involving a different type of inconsistency between a court's verdict and the jury's verdict, and the court's verdict prevailed.

Even with regard to inconsistent jury verdicts in criminal cases, Maryland cases have from time to time narrowed the area of toleration. Thus, inconsistent jury verdicts of guilty have long been held to be invalid. *See, e.g., Shell v. State, supra,* 307 Md. at 55, 512 A.2d at 362 ("[N]ot all inconsistent verdicts are permitted to stand . . . [, such as] 'inconsistent verdicts of guilty under different counts of the same indictment,' " quoting *Johnson v. State, supra,* 238 Md. at 541, 209 A.2d at 771); *Mack v. State, supra,* 300 Md. at 601, 479 A.2d at 1353 (Inconsistent jury "finding[s] of guilt on two inconsistent counts [are] invalid"); *Fletcher v. State,* 231 Md. 190, 189 A.2d 641 (1963); *Leet v. State,* 203 Md. 285, 293, 100 A.2d 789, 793 (1953) ("[I]t is true that a [jury] finding of *guilt* on two inconsistent counts will be declared invalid in Maryland").

In addition, the Court of Special Appeals has held that inconsistent jury verdicts in a criminal case will not be allowed where the trial judge failed to give an instruction on the requirement of consistent verdicts, even though there had been no request for such instruction and the defendant had not objected to the failure. *Stuckey v. State,* 141 Md.App. 143, 157 n. 3, 784 A.2d 652, 660 n. 3 (2001), and cases there cited. Another exception to the principle allowing inconsistent jury verdicts was recognized in *Hoffert v. State,* 319 Md. 377, 572 A.2d 536 (1990).[3]

---

**3.** The defendant in *Hoffert* faced four charges. In order to achieve consistency, a finding of guilt on the fourth charge required a finding of guilt on a least one of the first three charges. The jury found the defendant "not guilty" of the first three, but was initially silent with respect to the fourth. Such silence was consistent with the acquittals on the first three charges. Shortly thereafter, when the clerk began to hearken the jury, and the trial judge then began to say something, a juror called attention to the fourth charge, and the foreman gave a

■ A significant limitation upon the toleration of inconsistent jury verdicts is that the trial court, in its discretion, need not accept inconsistent verdicts and may grant relief. In *Mack v. State, supra,* 300 Md. at 599–600,479 A.2d at 1352, this Court made it clear "that it is the duty of a jury to decide a criminal case according to established rules of law," that "the trial court has the power to set aside the verdict" when the jury misapplies the law, that inconsistent jury verdicts are contrary to the law and "contrary to the trial court's instructions," and that the granting of relief "is within the discretion of the trial court." No criteria, however, have been set forth in this Court's opinions to guide trial courts in deciding whether or not inconsistent jury verdicts in criminal cases should be accepted by trial judges. Typically, as in the present case, the reason given by trial judges for accepting inconsistent jury verdicts is that they are permitted under the law. This reason furnishes no standard for a trial court's exercise of discretion as to whether inconsistent jury verdicts should or should not stand. Under this reasoning, all inconsistent jury verdicts would stand.

The most important and most recent Maryland exception to the toleration of inconsistent jury verdicts is jury inconsistency in civil actions. In *Southern Management v. Taha,* 378 Md. 461, 467, 836 A.2d 627, 630 (2003), a civil case in which the jury rendered inconsistent verdicts, this Court for the first time held "that such irreconcilably inconsistent jury verdicts cannot stand . . . ."

Some of the background underlying the *Taha* holding is noteworthy. About one year prior to the *Taha* decision, in *Galloway v. State, supra,* 371 Md. 379, 809 A.2d 653, a

---

"guilty" verdict on the fourth charge. After the jury was polled, the trial judge accepted the guilty verdict on the ground that it was permitted by Maryland law. This Court, however, reversed the conviction on the fourth charge, pointing out that the initial verdicts, including the silence on the fourth charge, "were legally proper," "were not contrary to the law and . . . were in full accord with the judge's instructions which properly reflected the law." *Hoffert,* 319 Md. at 386, 572 A.2d at 541.

criminal case involving inconsistent verdicts by both the jury and the trial judge, this Court pointed out that verdicts by the trial judge, which were inconsistent with verdicts by the jury, are not allowed in civil cases. Judge Cathell for the Court then stated (371 Md. at 400, 809 A.2d at 666):

"We see no reason why the consistency requirements in criminal cases should be less stringent than the standards we have applied in civil cases."

The *Galloway* opinion concluded as follows (371 Md. at 417, 809 A.2d at 676):

⠆ "Moreover, to accept what occurred here would be to create different, harsher, standards in criminal cases than in civil cases. We are unwilling to afford less protection to the jury trial rights of a criminal defendant, whose very liberty, or even his or her life, is at stake, than to a civil litigant, where, generally, it is money that is at stake."

It was against this background that the Court in *Taha* held invalid the inconsistent jury verdicts in a civil action. Moreover, *Taha* recognized the similarity between inconsistent verdicts in criminal jury trials and inconsistent verdicts in civil jury trials. Judge Battaglia for the Court in *Taha* quoted the reasons given in an earlier criminal case for tolerating inconsistent jury verdicts (*Shell v. State, supra*, 307 Md. at 54, 512 A.2d at 362), and then stated (*Taha*, 378 Md. at 487, 836 A.2d at 642):

"[t]he jury interplay involved in rendering a civil verdict involves the same potential for jury compromises in order to reach unanimity and mistakes as the process in criminal jury verdicts."

Consequently, as to the difference between the *Taha* holding in civil cases and the earlier holdings in criminal cases, the *Taha* opinion expressly left the question open, saying (378 Md. at 488 n. 8, 836 A.2d at 642 n. 8):

"We leave for another day the issue of whether this Court should reconsider its decision in criminal matters in which inconsistent verdicts have been rendered."

Today is the "[ ]other day" for this Court to reconsider the matter of inconsistent jury verdicts in criminal trials.

### B.

As earlier mentioned, the Maryland principles governing inconsistent verdicts are neither reflected in statutes nor in the Rules promulgated by this Court. Instead, those principles have, by case law, developed from time to time as part of Maryland common law. Nevertheless, "[b]ecause of the inherent dynamism of the common law, we have consistently held that it is subject to judicial modification in light of [new] circumstances," *Ireland v. State,* 310 Md. 328, 331, 529 A.2d 365, 366 (1987). "[A]s often pointed out, this Court has authority under the Maryland Constitution to change the common law." *Bowden v. Caldor,* 350 Md. 4, 27, 710 A.2d 267, 278 (1998). *See also, e.g., Mayor & City Council of Baltimore v. Clark,* 404 Md. 13, 944 A.2d 1122 (2008) (This "Court certainly has the authority to change the common law"); *Owens v. State,* 399 Md. 388, 413, 924 A.2d 1072, 1086 (2007) ("'The common law rule may, within constitutional constraints, be changed or modified by . . . judicial decision where it is found to be a vestige of the past, no longer suitable to [present] circumstances,'" quoting *Jones v. State,* 303 Md. 323, 337 n. 10, 493 A.2d 1062, 1069 n. 10 (1985)); *Fox v. Wills,* 390 Md. 620, 635, 890 A.2d 726, 735 (2006); *Davis v. Slater,* 383 Md. 599, 614, 861 A.2d 78, 86–87 (2004); *Baltimore Sun v. Baltimore,* 359 Md. 653, 662, 755 A.2d 1130, 1135 (2000); *Owens–Illinois v. Zenobia,* 325 Md. 420, 469–470, 601 A.2d 633, 657–658 (1992), and cases there cited.

The numerous exceptions to the principle tolerating inconsistent verdicts, and, more importantly, the recent opinions in *Southern Management v. Taha, supra,* 378 Md. 461, 836 A.2d 627, and *Galloway v. State, supra,* 371 Md. 379, 809 A.2d 653, are circumstances which fully warrant a prospective change in the common law applicable to inconsistent verdicts. There is no longer any justification for the one remaining situation where inconsistent verdicts are tolerated, namely certain types of inconsistent verdicts by a jury in a criminal trial. Contin-

ued acceptance of inconsistent verdicts, in that one situation, is simply not reasonable.

This Court has consistently stated that inconsistent jury verdicts are "contrary to law," and that the trial court should instruct the jury that it cannot return inconsistent verdicts. *Galloway v. State, supra,* 371 Md. at 407–408, 809 A.2d at 671; *Shell v. State, supra,* 307 Md. at 54, 512 A.2d at 362; *Mack v. State, supra,* 300 Md. at 594–600, 479 A.2d at 1349–1352. We have taken the position that "the possibility of inconsistent verdicts" should be "minimize[d]" in "order to avoid. this deleterious result," and that inconsistent verdicts violate "the duty of the jury to decide a criminal case according to established rules of law," *Mack,* 300 Md. at 595, 597, 599, 479 A.2d at 1350–1351. Nonetheless, some inconsistent jury verdicts were tolerated because of the historic role of the jury in our justice system and because "inconsistencies may be the product of lenity, mistake or a compromise to reach unanimity." *Shell v. State, supra,* 307 Md. at 54, 512 A.2d at 362.

The reasons given in the past for tolerating inconsistent jury verdicts, if valid, would be equally applicable to civil cases and criminal cases. The jury has an historic and unique role in civil actions at law just as it has in criminal prosecutions.

Trial by jury, both in civil and criminal trials, originated in ancient Greece. *See* Bloomstein, *Verdict, The Jury System,* pp. 3–4 (1968).[4] In England, trial by jury began soon after the Norman conquest, and was used primarily in civil actions

---

4. The author, at pp. 3–4, describes the historical origins of the jury trial as follows (emphasis in part added):

"As Greece was the cradle of liberty, so was it the place of origin of the jury system, or, at least, the forerunner of it. The key to the Greek system was the use of *dikasteries.* Well before the time of the birth of Christ, the Greeks selected by lot six thousand citizens (thereafter called *dikasts*) above thirty years of age and divided into smaller groups, called *decuries.* When a *civil or criminal trial* was ready to be held, lots were drawn to determine in which *decury* and court the case was to be heard, so that no one could know in advance before whom the case would appear and attempt to influence the decision.

" 'Juries' were large at this time. During the era of Pericles (467–428 B.C.) the *decury* consisted of between two hundred and five

during the reign of Henry II. Bloomstein, *supra*, at 16–17.[5] *See also* Vidmar & Hans, *American Juries*, p. 24 (2007) (The authors, referring to the report of an English jury trial in 1221, state: "When the Church forbade trial by ordeal, the jury seemed a logical successor for both criminal *and civil disputes.* The idea developed slowly and unevenly throughout England") (emphasis added).

One of the earliest cases in the Maryland Reports involved the right to a jury trial in a civil action of ejectment. *Abington v. Lowry,* 1 H. & McH. 8 (1662). The right to a jury trial in civil cases is dealt with in six separate provisions of the Maryland Constitution. *See* Articles 5 and 23 of the Maryland Declaration of Rights, and Article III, §§ 40, 40A, 40B, and 40C, of the Constitution. *See also Bryan v. State Roads,* 356 Md. 4, 10–15, 736 A.2d 1057, 1060–1063 (1999).

In sum, a jury in a civil action at law has an historic and singular role in our system of justice which is similar to the

---

hundred *dikasts,* and sometimes, in important trials, a thousand, fifteen hundred, or even two thousand members."

5. Bloomstein explains, at 16–17:

"In cases where trial by combat was inapplicable, impracticable, not customary, or interdicted by the clergy, and in cases that were, at first, of generally inferior importance, men of the neighborhood where the offense was surmised to have been committed were gathered in an inquest. Those who were selected were supposed to have knowledge of the facts of the matter. Significantly, as today, friends, enemies, and near relations of the accused were excluded.

"These quasi-jurors were called recognitors. The recognitor system soon came to be used in civil cases as well. The recognitors were generally twelve in number, or some multiple thereof.

"During the reign of Henry II, trial by jury became somewhat general, primarily in actions involving land and related matters. The persons whose possession of land was impugned or the defendant in a matter related to such possession could make a choice between trial by battle or a trial before twelve recognitors.

"Out of these recognitions arose the entire system of trial by jury as we know it. The jurors, or recognitors, were at first witnesses of the fact. In the reign of Edward I, additional persons were added to the jury. Slowly, the jurors having knowledge were separated from the other jurors and became the witnesses, leaving the decision in the hands of those not having knowledge of the facts. This latter development began in the reign of Edward III, about A.D. 1350."

historic and singular role of a jury in a criminal case. Furthermore, as pointed out by the Court in *Southern Management v. Taha*, supra, 378 Md. at 487, 836 A.2d at 642, an inconsistent jury verdict in a civil case may be the product of lenity, mistake or a compromise to reach unanimity, to the same extent as an inconsistent jury verdict in a criminal case.[6] In fact, a jury's reliance on lenity in a criminal case relates only to the defendant; in a civil case, any party may be the beneficiary of lenity. Despite the acknowledgment that the reasons for tolerating inconsistent jury verdicts in criminal cases are also applicable to inconsistent jury verdicts in civil cases, the Court in *Taha* held that inconsistent jury verdicts in civil cases would not be allowed. If the traditional reasons for tolerating inconsistent jury verdicts are not sufficient in civil cases, those reasons are clearly not sufficient in criminal cases.[7]

---

**6.** In a civil case, like a criminal case, "[t]he verdict of a jury shall be unanimous" unless the parties otherwise agree. Maryland Rule 2–522(b). *See State v. McKay*, 280 Md. 558, 561–562, 571, 375 A.2d 228, 230–231, 235 (1977) ("The unanimous jury verdict traces its ancestry to the Middle Ages. * * * By the 18th Century, the unanimous verdict had established itself as a basic attribute of the common law jury"). *See also Attorney Grievance Commission v. Bailey*, 285 Md. 631, 635, 403 A.2d 1261, 1264 (1979).

**7.** The *Taha* opinion, 378 Md. at 488, 836 A.2d at 642, referred to "irreconcilably inconsistent verdicts" in civil cases, such as the verdicts in *Taha*, and seemed to suggest that this factor distinguished *Taha* from the inconsistent verdicts that had been tolerated in criminal cases. Of course, the phrase "irreconcilably inconsistent" is redundant. In this context, "irreconcilable" adds nothing to the word "inconsistent" and is superfluous. If verdicts can be reconciled, they are not inconsistent in either civil or criminal cases and are allowable. Even in a nonjury trial, if a trial judge's verdicts can be reconciled, they are not inconsistent and are allowable. This principle has been discussed in several Maryland cases. *See, e.g., State v. Anderson*, 320 Md. 17, 29–30, 575 A.2d 1227, 1232 (1990); *Shell v. State*, 307 Md. 46, 56–57, 512 A.2d 358, 363–364 (1986); *Johnson v. State*, 238 Md. 528, 544–545, 209 A.2d 765, 772 (1965).

In the present case, the guilty verdict on the count charging possession of a firearm during a drug trafficking crime clearly was, as a matter of law, inconsistent with the acquittals on all counts charging drug trafficking crimes. Commission of a drug trafficking crime is a

Moreover, in criminal jury trials, our system accords greater procedural protections for the defendant than we give to either side in civil jury trials. Consequently, if there is to be a difference, there should be less toleration of inconsistent jury verdicts in criminal cases than in civil cases. As previously pointed out, this Court in *Galloway v. State, supra,* 371 Md. at 400, 417, 809 A.2d at 666, 676, emphasized that "the consistency requirements in criminal cases" should not "be less stringent than the standards we have applied in civil cases," and that we are "unwilling to afford less protection to the jury trial rights of a criminal defendant, whose very liberty, or even his or her life, is at stake, than to a civil litigant, where, generally, it is money that is at stake." To uphold, in the present case, the inconsistent jury verdict of guilty on the count charging possession of a firearm during a drug trafficking crime, would be to repudiate the principles recently set forth in our *Galloway* opinion.

This Court has sometimes observed that the majority of jurisdictions allow inconsistent jury verdicts in criminal cases. *See, e.g., Shell v. State,* 307 Md. 46, 54, 512 A.2d 358, 362 (1986); *Ford v. State,* 274 Md. 546, 553, 337 A.2d 81, 85–86 (1975). It is, however, very doubtful that a majority of jurisdictions, by case law, recognize all of the exceptions and limitations to the allowance of inconsistent verdicts which are reflected in Maryland appellate opinions. For example, many jurisdictions allowing inconsistent verdicts in criminal jury trials also, contrary to Maryland cases, allow inconsistent verdicts in criminal nonjury trials.[8] A distinction between civil

---

critical element of the firearm offense. Moreover, the State acknowledged the inconsistency both in the trial court and on appeal. Consequently, we need not at this time explore other circumstances where apparently inconsistent verdicts may or may not be reconcilable.

**8.** *See, e.g., United States v. Chilingirian,* 280 F.3d 704, 711 (6th Cir. 2002) ("[I]nconsistent verdicts rendered by a judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury"); *United States v. Wright,* 63 F.3d 1067, 1073–1074 (11th Cir.1995); *United States v. West,* 549 F.2d 545, 553 (8th Cir.1977); *State v. Garza,* 196 Ariz. 210, 212, 994 P.2d 1025, 1027 (1999); *Haynesworth v. United States,* 473 A.2d 366, 371 (D.C.1984); *People v. McCoy,* 207 Ill.2d 352,

and criminal cases, with regard to inconsistent verdicts, may in some jurisdictions be based upon statutes or rules.[9] In addition, the holding in *Mack v. State, supra,* 300 Md. at 599–600, 479 A.2d at 1352, apparently leaving the acceptance or rejection of inconsistent jury verdicts in the unbridled discretion of the trial judge, seems to be unique.

Some State Supreme Courts have refused to allow inconsistent jury verdicts in criminal cases. The reasoning of the Supreme Court of Alaska in *DeSacia v. State,* 469 P.2d 369 (Alaska 1970), is persuasive. The court explained that there is (469 P.2d at 377)

> "no basis to assume . . . that inconsistent verdicts are the product of a jury's disposition toward treating the accused leniently; nor can we see a basis for assuming that, in allowing inconsistent jury verdicts in criminal trials to stand, we run only 'the risk that an occasional conviction may have been the result of compromise.' The truth is simply that we do not know, nor do we have any way of telling how many inconsistent verdicts are attributable to feelings of leniency, to compromise, or, for that matter, to outright confusion on the part of the jury."

The Supreme Court of Florida has held that "the possibility of a wrongful conviction . . . outweighs the rationale for allowing [inconsistent] verdicts to stand." *Brown v. State,* 959 So.2d 218, 222 (Fla.2007). In addition, the Court of Appeals of New York held that a conviction "will be reversed . . . in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered." *People*

---

357, 278 Ill.Dec. 551, 799 N.E.2d 269, 272 (2003); *Pennsylvania v. Magliocco,* 584 Pa. 244, 265, 883 A.2d 479, 492 (2005).

**9.** *See, e.g.,* Rule 49(b)(4) of the Federal Rules of Civil Procedure. This Rule was discussed in *Southern Management v. Taha,* 378 Md. 461, 492, 836 A.2d 627, 644 (2003), where we pointed out that "there is no counterpart to FRCP 49(b) in the Maryland Rules." There is also no counterpart in the Federal Rules of Criminal Procedure.

*v. Tucker,* 55 N.Y.2d 1, 7, 447 N.Y.S.2d 132, 431 N.E.2d 617, 619 (1981).

In *Southern Management v. Taha, supra,* 378 Md. at 489, 836 A.2d at 643, we held that striking a jury's inconsistent verdict of civil liability was "the only logical and legally sound conclusion...." This Court has also characterized a jury's verdict of guilty, which is flatly inconsistent with the jury's verdict of not guilty on another count, as "illogical" and "contrary to law." There is no reasonable basis for reversing the inconsistent verdict of *"liability"* but not reversing the inconsistent verdict of *"guilty."*

Accordingly, with regard to the instant case, similarly situated cases on direct appeal where the issue was preserved, and verdicts in criminal jury trials rendered after the date of our opinion in this case, inconsistent verdicts shall no longer be allowed. For a discussion and review of the effective date for changes in the common law, *see Owens–Illinois v. Zenobia, supra,* 325 Md. at 469–470, 601 A.2d at 657–658.

### III.

We agree with the Court of Special Appeals that, under § 5–905 of the Criminal Law Article, Price's enhanced sentences must be vacated. With regard to Price's drug possession sentences which are subject to enhancement under § 5–905, only one of them may be doubled under the statute.

Section 5–905(a) provides that a "person convicted of a subsequent crime" is subject to "twice" the term of imprisonment which is "otherwise authorized," and § 5–905(d) states that "[a] sentence on a *single count under this section* may be imposed in conjunction with other sentences under this title." (Emphasis added). The State argues that "the plain language of the statute" permitted the trial court's doubling of the sentences on all three possession counts. (State's opening brief at 16). The defendant Price contends that the General Assembly, in subsection (d) of § 5–905, "chose ... to mandate that only a sentence on a single count could be imposed under § 5–905(d) in conjunction with other sentences." (Defendant's

reply brief at 10). Alternatively, the defendant argues that the "Court of Special Appeals correctly ruled that application of the rule of lenity compelled the conclusion that Mr. Price was subject to a single sentence enhancement under § 5–905." (*Id.* at 14).

The State's "plain language of the statute" argument focuses on subsection (a) of § 5–905, as Price was convicted of subsequent drug crimes under three separate counts, with three separate sentences authorized, and with each term of imprisonment arguably subject to being doubled. Nevertheless, the language of subsection (a) does not address multiple crimes charged together and based on the same incident. In addition, the State's "plain language" argument does not take into account subsection (d) of § 5–905.

Very often, a statute may be unambiguous in certain contexts but ambiguous in other contexts. *See, e.g., BAA v. Acacia,* 400 Md. 136, 151, 929 A.2d 1, 9–10 (2007); *Bank of America v. Stine,* 379 Md. 76, 85, 839 A.2d 727, 733 (2003) ("As we have recognized, however, '[a]n ambiguity may . . . exist even when the words of the statute are . . . clear. That occurs when its application in a given situation is not clear,' " quoting *Blind Industries v. D.G.S.,* 371 Md. 221, 231, 808 A.2d 782, 788 (2002)). Thus, if Price had been convicted of just one of the possession counts, § 5–905 would have, unambiguously, authorized the doubling of his sentence under that count. What is not clear is how the enhancement applies under the circumstances of this case. In fact the State, elsewhere in its briefs, seems to recognize this degree of ambiguity, acknowledging that "the Legislature did not anticipate and explicitly address [the] particular fact pattern" here (State's opening brief at 33) and that the General Assembly "did not anticipate, and explicitly address, the argument that Price . . . makes" (*id.* at 40–41; *see also id.* at 17; State's reply brief at 5).

The State principally relies on *Whack v. State,* 338 Md. 665, 659 A.2d 1347 (1995), and on the enactment in the year 2000 of subsection (d) which was a response to the decisions in *Scott v. State,* 351 Md. 667, 720 A.2d 291 (1998), and *Gardner v. State,*

344 Md. 642, 689 A.2d 610 (1997). The State's reliance, however, is misplaced. All three of those cases involved the question of whether the sentences in the cases before the Court could be enhanced by *two separate enhancement* statutes. In the present case, however, the issue is whether sentences on multiple counts, all based on the same transaction, can each be enhanced by the *same enhancement* statute.

In *Whack*, the Court interpreted a predecessor to § 5–905, Maryland Code (1957, 1992 Repl.Vol.), Article 27 § 293.[10] The issue in *Whack* was whether former § 293 could be applied along with another enhancement statute, former Article 27, § 286(c), to increase the sentences on different counts in the same case.[11] The Court upheld the enhancements under each statute, reasoning that "the provisions of § 286(c) and § 293 each enhance a repeat drug offender's sentence indifferent ways." *Whack v. State,* 338 Md. at 682, 659 A.2d at 1355. Permitting the application of two distinct enhancement mechanisms, operating in different ways, is not the same as applying

---

**10.** This section provided in relevant part as follows:

"(a) Any person convicted of any offense under this subheading is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that otherwise authorized, by twice the fine otherwise authorized, or by both.

"(b) For purposes of this section, an offense shall be considered a second or subsequent offense, if, prior to the conviction of the offense, the offender has at any time been convicted of any offense or offenses under this subheading or under any prior law of this State or any law of the United States or of any other state relating to the other controlled dangerous substances as defined in this subheading."

**11.** The relevant portion of § 286(c) was as follows:

"(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section, shall be sentenced to imprisonment for not less than 10 years if the person previously has been convicted:

(i) under subsection (b)(1) or subsection (b)(2) of this subsection;

\* \* \*

"(1) the prison sentence of a person sentenced under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section or any combination of these offenses, as a second offender may not be suspended to less than 10 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code."

a single enhancement mechanism to multiple counts. The Court allowed the multiple enhancements in *Whack* because the different enhancement statutes applied in "different ways." That is not the situation in the present case.

In *Scott v. State, supra,* 351 Md. 667, 720 A.2d 291, this Court considered whether former § 293 and a second enhancement statute, former Article 27, § 286(f)(3), could each apply to a conviction on a single count. *Gardner v. State* considered the parallel issue of whether former § 293 and former § 286(c) could each enhance a sentence on a single count. Both *Scott* and *Gardner* held that it was ambiguous whether the Legislature had intended the application of two separate highly penal enhancement statutes to a single count. This Court, therefore, applied the rule of lenity. *Scott v. State,* 351 Md. at 677, 720 A.2d at 295; *Gardner v. State,* 344 Md. at 651–652, 689 A.2d at 614–615.

In response to *Scott* and *Gardner,* the General Assembly in the year 2000 enacted Senate Bill 345, which is now codified as § 5–905(d) of the Criminal Law Article. The Department of Legislative Services' "Fiscal Note" and "Analysis" with respect to Senate Bill 345, at p. 1, explained that the Bill was intended to rectify the problem found by the Court in *Gardner v. State,* namely that "the application of these statutes in enhancing a single count of a violation is ambiguous." The Department of Legislative Services continued (*id.* at pp. 1–2):

"This bill clarifies that intent by clearly applying the enhanced penalty under the Article 27, Section 293(b)(3) to any controlled dangerous substance offense. . . ."

"In *Gardner,* and in reversing a related Court of Special Appeals opinion, the Court of Appeals held that a single count may not be enhanced under both sections of Article 27."

A Report of the House Judiciary Committee concerning Senate Bill 345 similarly stated that the purpose of the Bill was to "apply[ ] the enhanced penalty under Article 27, § 293 to any controlled dangerous substance offense" and that "[t]his bill

provides that a sentence under Article 27, § 293 may be imposed in conjunction with other sentences...."[12]

Like the statutory language, the legislative history of § 5–905(d) reads in terms of one "offense" or a single "count" being enhanced "under" § 5–905 of the Criminal Law Article. Nothing in § 5–905(d)'s legislative history discloses the General Assembly's intent that § 5–905 should apply to each one of multiple counts based on the same incident. In the present case, § 5–905 is not being applied to a single offense in conjunction with another enhancement statute. Neither the statutory language nor the legislative history of subsection (d) addresses the application of § 5–905 to the situation now before the Court.

We agree with the Court of Special Appeals that § 5–905 of the Criminal Law Article, as applied to the circumstances of this case, is ambiguous. "If there is doubt as to the penalty, then the law directs that [the] punishment must be construed to favor a milder penalty over a harsher one." *Gardner v. State*, 344 Md. at 651, 689 A.2d at 614. *See Chow v. State*, 393 Md. 431, 472, 903 A.2d 388, 412 (2006) ("an enhanced penalty statute is highly penal.... When doubt exists regarding the punishment imposed by a statute, the rule of lenity instructs that a court not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to

---

12. There is one interesting discrepancy between the two reports explaining Senate Bill 345 of the 2000 legislative session. The Analysis by the Department of Legislative Services states that the enhanced penalty applies "to any controlled dangerous substance offense that *does not provide for a mandatory minimum sentence*" (emphasis added). The House Judiciary Committee's Report interpreted the Bill's language to mean that "the enhanced penalty under Article 27, § 293 [will apply] to any controlled dangerous substance offense, *including a sentence that imposes a mandatory minimum sentence.*" (Emphasis added). There was no change in the Bill's language, during the legislative process, that would explain the different interpretations as applied to a mandatory minimum sentence. The language of the Bill when enacted was identical to the language of the Bill when it was introduced. This discrepancy might reinforce the conclusion that there is a degree of ambiguity associated with some applications of § 5–905 of the Criminal Law Article.

what [the legislature] intended," quoting *Melton v. State,* 379 Md. 471, 489, 842 A.2d 743, 753 (2004)). *See also Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712, 716–717 (1999); *Webster v. State,* 359 Md. 465, 481, 754 A.2d 1004, 1012 (2000); *McGrath v. State,* 356 Md. 20, 25, 736 A.2d 1067, 1069 (1999).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE CONVICTION FOR POSSESSION OF A FIREARM, DURING AND IN RELATION TO A` DRUG TRAFFICKING CRIME, UNDER SUFFICIENT CIRCUM-STANCES TO CONSTITUTE A NEXUS TO THE DRUG TRAFFICKING CRIME, AND WITH FURTHER DI-RECTIONS TO VACATE THE SENTENCES ON THE THREE POSSESSION COUNTS AND REMAND THE CASE TO THE CIRCUIT COURT FOR RESENTENCING ON THE POSSESSION COUNTS IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.*

HARRELL, J., files a concurring opinion in which BATTAGLIA, J., joins generally and ALAN M. WILNER, J. (Retired, Specially Assigned), joins in Part C only.

Concurring Opinion by HARRELL, Judge, joined by BATTAGLIA, Judge generally and Judge WILNER as to Part C only.

I concur in the judgment of the Majority regarding inconsistent verdicts in criminal actions. The accreted hodgepodge of exceptions[1] to Maryland's traditional toleration of inconsistent

---

1. For example, two inconsistent convictions cannot stand. *Heinze v. State,* 184 Md. 613, 42 A.2d 128 (1945). Maryland law does not permit inconsistent verdicts by a judge but accepts them from a jury. *State v. Anderson,* 320 Md. 17, 29, 575 A.2d 1227, 1233 (1990) Maryland courts do not tolerate inconsistent verdicts in a civil trial. *S. Mgmt. v. Taha,* 378 Md. 461, 467, 836 A.2d 627, 630 (2003). In addition, the exception

verdicts has undermined the intellectual justification for continuing to permit such verdicts. I write separately, however, to encourage clarification of the scope of today's holding and the proper procedure to be followed by a defendant in the trial court and a trial judge in order to fashion relief from an inconsistent verdict, thereby giving guidance and possibly sparing our appellate courts unnecessary appeals.

## A.

### Distinguish Factual From Legal Inconsistency

The Majority opinion, while undoubtedly joining the minority of states that prohibit inconsistent verdicts, does not penetrate further into the jurisprudential wilderness.[2] I think it important to note explicitly that the Majority's holding applies only to "legally inconsistent" verdicts, not "factually inconsistent" verdicts. The Court should continue to recognize factually or "logically" inconsistent verdicts rendered by juries in criminal cases.

A factually inconsistent verdict is one where a jury renders "different verdicts on crimes with distinct elements when there was only one set of proof at a given trial, which makes the verdict illogical." Ashlee Smith, Comment, *Vice–A Verdict: Legally Inconsistent Jury Verdicts Should Not Stand in Maryland*, 35 U.BALT. L.REV. 395, 397 n. 16 (2006). The feature distinguishing a factually inconsistent verdict from a legally inconsistent verdict is that a factually inconsistent verdict is merely illogical. By contrast, a legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instructions regarding the law. The difference be-

---

to the general rule that inconsistent verdicts are permitted in criminal jury trials espoused in *Hoffert v. State*, 319 Md. 377, 572 A.2d 536 (1990) (discussed in the Majority op. at 20–21, 949 A.2d at 625, n. 3) undermines any remaining justification for continuing to tolerate such verdicts.

**2.** For a survey of the states in the national majority, see Eric L. Muller, *The Hobgoblin of Our Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 HARV. L.REV. 771, 787 n. 80 (1998).

tween the two is perhaps best illustrated by examples from other jurisdictions.

Assume a legally intoxicated or otherwise reckless driver causes a head-on collision, killing on impact the driver and passenger of the other car. The intoxicated driver is charged with two counts of vehicular homicide. The jury convicts the defendant of vehicular homicide as to the death of the driver of the other car, but finds the defendant not guilty of the same crime with regard to the death of the passenger. Such a result would constitute factually inconsistent verdicts.[3]

---

**3.** Both Alaska and Florida, states that we join today in the national minority, addressed situations similar to the hypothetical scenario discussed above. *DeSacia v. State*, 469 P.2d 369 (Alaska 1970); *Naumowicz v. State*, 562 So.2d 710, 713 (Fla.Dist.Ct.App.1990). The Florida court properly affirmed the factually inconsistent verdict, noting:

> The only exception to the proposition that separate counts must be viewed independently is limited to instances where what the jury *fails to find* in one count vitiates a guilty verdict on a separate count to the benefit of the defendant. For example, an acquittal of an underlying felony effectively holds the defendant innocent of a greater offense involving that same felony. (Citations omitted.)

*Naumowicz*, 562 So.2d at 713.

Alaska is, as far as I have been able to determine, the only jurisdiction that overturns a verdict that a court finds factually illogical. It would be imprudent for appellate judges to attempt to discern from the evidence presented at trial whether a jury's verdict is factually illogical. Accordingly, I caution against reading too much into the Majority opinion's use of a quotation from *DeSacia*. Majority op. at 28, 949 A.2d at 630. Although the Supreme Court of Alaska eloquently notes the conceptual difficulties associated with accepting inconsistent verdicts, the analysis from that particular case should not be adopted in Maryland.

Instead, Maryland should remain safely in the "majority of the minority" of states that prohibit legally inconsistent verdicts while nonetheless permitting logically or factually inconsistent verdicts. Thus, we would join New York (*People v. Tucker*, 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)), Florida (*Naumowicz*, 562 So.2d 710), Missouri (*State v. Flemons*, 144 S.W.3d 877 (Mo.Ct.App.2004)) and Rhode Island (*State v. Arroyo*, 844 A.2d 163 (R.I.2004)) in declining to intrude and analyze the fact-finding of the jury. Appellate courts are ill equipped to determine whether a jury's verdict is illogical factually, or merely "curious." We must be careful not to "confuse a curious verdict with an inconsistent verdict." *Hudson v. State*, 152 Md.App. 488, 515, 832 A.2d 834, 850 (2003). A factual inquiry may be appropriate in the civil context, where the use of a "special verdict" may illuminate the factual basis for a jury's verdict. Such an inquiry, however, is inappropriate in criminal cases.

The verdicts in the present case also contain a factual inconsistency. Price was acquitted of being a felon in possession of a handgun,[4] but convicted of possessing a handgun in the course of drug trafficking.[5],[6] There was no dispute at trial as to Price's prior felony convictions. Therefore, it is illogical for the jury to find that Price is guilty of possessing a firearm in the course of drug trafficking without possessing a firearm as a convicted felon. Despite the illogical verdict, this does not rise to the level of a legally inconsistent verdict. Thus, if this were the only grounds for challenging Price's conviction for possession of a handgun in the course of drug trafficking, his conviction should be affirmed.

A legal inconsistency, by contrast, occurs when "an acquittal on one charge is conclusive as to an element which is necessary to and inherent in a charge on which a conviction has occurred...." Stephen T. Wax, *Inconsistent and Repugnant Verdicts in Criminal Trials*, 24 N.Y.L. Sch. L. Rev. 713, 740 (1979). Similarly, the Supreme Court of Rhode Island stated that "if the essential elements of the count[s] of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent." *State v. Arroyo*, 844 A.2d 163, 171 (R.I. 2004) (internal quotation omitted). "Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to

---

4. Maryland Code (1957, 1996 Repl Vol.) Article 27, §§ 445(d) and 449(e), recodified at Maryland Code (2003), Public Safety § 5–133.

5. Maryland Code (2002), Criminal Law, § 5–621.

6. Price also was acquitted of unlawfully wearing, carrying, or transporting a handgun in violation of Maryland Code (2002), Criminal Law, § 4–203. Depending on the facts presented at trial, this also may be inconsistent factually with his conviction for possession of a handgun with a nexus to drug trafficking. Nonetheless, such verdicts are not legally inconsistent. Section 4–203(b) contains numerous exceptions to the prohibition on wearing, carrying, or transporting of a handgun.

exist." *People v. Frias,* 99 Ill.2d 193, 75 Ill.Dec. 674, 457 N.E.2d 1233, 1235 (1983).[7]

As Price's acquittal established conclusively that he was not engaged in drug trafficking, the Majority opinion correctly concludes that the conviction for possession of a handgun while engaged in drug trafficking may not stand.

## B.

### Relationship to the "Rule of Consistency" in Conspiracy Cases

The Majority's opinion holding represents a return to ideo-logical consistency regarding legally inconsistent verdicts. It is important to note parallels between the application of this newly announced rule and the "rule of consistency" applicable in conspiracy cases. "As one person alone cannot be guilty of conspiracy, when all but one conspirator are acquitted, convic-tion of the remaining conspirator cannot stand." *Hurwitz v. State,* 200 Md. 578, 92 A.2d 575, 581 (1952). This "rule of consistency does not apply to separate trials. . . ." *Gardner v. State,* 286 Md. 520, 528, 408 A.2d 1317, 1322 (1979); *accord State v. Johnson,* 367 Md. 418, 430, 788 A.2d 628, 635 (2002) ("[T]hus, despite the acquittal of all of the respondent's co-conspirators in a prior trial, the respondent's conviction for conspiracy must stand."). There is no requirement that the State even try more than one conspirator. *Gardner,* 286 Md. at 524–25, 408 A.2d at 1320.

As a parallel, the Majority's opinion should not be read to require that the State even charge an underlying offense in order to maintain "consistency." Thus, Price could be convict-ed of possessing a handgun with a nexus to drug trafficking without being charged and tried for drug trafficking. In

---

7. It appears that Illinois no longer prohibits legally inconsistent ver-dicts, in light of *People v. Jones,* 207 Ill.2d 122, 278 Ill.Dec. 45, 797 N.E.2d 640 (2003). Nonetheless, the definition of a legally inconsistent verdict employed by the Supreme Court of Illinois remains helpful.

addition, the Majority opinion's requirement of legally consistent verdicts should apply only to single trials.[8]

The rule announced by the Majority opinion today applies only to outright acquittals rendered by a jury. If a jury deadlocks on one count of an indictment, but convicts on a compound offense of which the aforementioned count is a necessary element, the jury renders only one verdict. Thus, the conviction on the compound crime is not an inconsistent verdict. "In Maryland, a mistrial is equivalent to no trial at all." *Powers v. State*, 285 Md. 269, 285, 401 A.2d 1031, 1040 (1979) (citing *Cook v. State*, 281 Md. 665, 671, 381 A.2d 671, 674 (1978)). "Accordingly, a jury's failure to agree, which results in a mistrial, does not establish any facts" and this may not be said to establish an inconsistency. *Powers*, 285 Md. at 285, 401 A.2d at 1040 (citing *United States v. Smith*, 337 A.2d at 503–04 (Kern, J., concurring)). "Once a mistrial has been declared, all questions of fact remain to be decided. . . ." *Cook*, 281 Md. at 671, 381 A.2d at 674. "A nonverdict, to be sure, does not affirmatively establish one of the opposing poles for a set of inconsistent verdicts." *Butler v. State*, 91 Md.App. 515, 548, 605 A.2d 186, 202 (1992), *aff'd*, 335 Md. 238, 643 A.2d 389 (1994). "Moreover, it is logical to focus upon the counts

---

**8.** Even Professor Muller, who recommends harmless error review of inconsistent verdicts rendered by a single jury, has no objection to inconsistent verdicts rendered by separate juries.

While it is admittedly uncomfortable—especially in a death penalty case—to see two different juries reach inconsistent conclusions on similar evidence about the same episode, I don't believe that there's any reason to see legal error of any kind in the second jury's verdict. When a single jury reaches logically inconsistent verdicts in a single case, we can be certain from the verdict itself that the jury has somehow erred (in the sense, at least, of not following its instructions), and the argument of my Harvard article [Muller, *supra* note 1] is that the legal system ought to do something about inconsistent convictions in this setting (rather than just letting them stand, as the law now does). But when two juries reach logically inconsistent verdicts in separate trials, those verdicts supply no evidence that either jury has erred—let alone that the erring jury was [the] "harsher" one.

Is That Legal, http://www.isthatlegal.org/archives/2006/08/post_6.html (4 August 2006, 10:15 AM).

where the jury reached verdicts rather than upon counts representing no decision and establishing nothing." *Ferrell v. State*, 318 Md. 235, 255, 567 A.2d 937, 947 (1990).

## C.
### Procedure to be Followed in Challenging Inconsistent Verdicts at Trial

The Majority opinion properly notes that "where the issue was preserved" . . . "inconsistent verdicts shall no longer be allowed." Majority slip op. at 21. Because of the "sea change" announced by the Majority's opinion, some prospective direction is necessary and desirable to highlight the procedure required in order for a defendant to preserve for appellate review a challenge to a legally inconsistent verdict.

The jury may render a legally inconsistent verdict to show lenity to the defendant. Muller, *supra* at 784; Comment, *supra* at 28. The defendant should not be foreclosed from accepting the jury's lenity as a result of the holding of the Majority opinion. Nevertheless, we should not permit the defendant to accept the jury's lenity in the trial court, only to seek a windfall reversal on appeal by arguing that the jury's verdicts are inconsistent. Accordingly, a defendant must note his or her objection to allegedly inconsistent verdicts prior to the verdicts becoming final and the discharge of the jury. Otherwise, the claim is waived.[9] "If a defendant claims that a verdict is inconsistent to the point of being self-destructive, he must present that claim to the circuit court before the jury is discharged; if he does not, he waives the claim." *State v. Flemons*, 144 S.W.3d 877, 881 (Mo.Ct.App.2004); *see also*

---

**9.** In fact, quite often a defendant's optimal choice will be to remain silent, thus waiving his challenge to the inconsistent verdicts and accepting the conviction that may be inconsistent. A defendant, aware of his or her guilt, or the overwhelming evidence of guilt, of all of the crimes of which he or she stands charged, may choose to accept the jury's lenity. A defendant may be wise to accept the inconsistent conviction and accompanying sentence, rather than look a gift horse in the mouth. If the defendant objects to the inconsistent verdicts, the jury, given a second chance, may choose to remedy the error in a manner not in the defendant's favor.

*State v. Pelz*, 845 S.W.2d 561, 565 (Mo.Ct.App.1992) ("Defense counsel stood silent during the court's perusal of the error and the prosecutor's positive acceptance of the verdict. This silence, operating as an acceptance of the verdict, waived any further review...."); *People v. Satloff*, 56 N.Y.2d 745, 452 N.Y.S.2d 12, 13, 437 N.E.2d 271, 272 (1982) (mem.) ("Following discharge of the jury, defense counsel complained, for the first time, of the asserted inconsistency. At this point, it was no longer possible to remedy the defect, if any, by resubmission to the jury for reconsideration of its verdicts. Such a protest must be registered prior to the discharge of the jury properly to preserve the issue for review in this court." (citation omitted)).

"A verdict that has not been followed by either polling or hearkening, has not been properly rendered and recorded, and is a nullity." *Jones v. State*, 173 Md.App. 430, 457, 920 A.2d 1, 16 (2007). "It is in the absence of a demand for a poll that a hearkening is required for the proper recordation of a verdict." *Jones v. State*, 384 Md. 669, 684, 866 A.2d 151, 160 (2005).

> In the absence of a proper demand to have the jury polled, the hearkening and ensuing acceptance of the verdict finally removes the matter from the jury's consideration. But, despite a hearkening, if a demand for a poll is duly made thereafter, it is the acceptance of the verdict upon the poll that removes the verdict from the province of the jury. In other words, the jury has control of the verdict until it is final. Absent a demand for a poll, the verdict becomes final upon its acceptance when hearkened. When a poll is demanded, the verdict becomes final only upon its acceptance after the poll.

*Smith v. State*, 299 Md. 158, 168, 472 A.2d 988, 993 (1984).

Upon timely objection by the defendant[10] to legally inconsistent verdicts, the trial court should instruct or re-instruct the

---

10. Because the rule against legally inconsistent verdicts is intended to protect the criminal defendant, the State may not object to the inconsistent verdicts. The option belongs only to the defendant.

jury on the need for consistency and the range of permissible verdicts. The jurors then should be permitted to resume deliberation. The jury is free to resolve the inconsistency either by returning verdict in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding results. "Until the announcement that the verdict has been recorded, the jury has the right to amend or change any verdict; and when it is so amended it is the real verdict of the jury and it may be properly accepted by the court." *Heinze v. State,* 184 Md. 613, 617, 42 A.2d 128, 130 (1945).[11]

In sum, a defendant must note his objection to the inconsistent verdict while the trial court has an opportunity to remedy the error, *i.e.,* before the verdict is final and the jury is discharged. Failure to do so constitutes waiver.

Judge BATTAGLIA authorizes me to represent that she joins this concurring opinion generally. Judge WILNER authorizes me to represent that he joins in Part C of this concurrence.

---

**11.** There is no double jeopardy consequence in permitting the trial court, upon the defendant's request, to re-instruct the jury and permit it to return to deliberations. The defendant knowingly and affirmatively waives any challenge to the jury's reconsideration of the inconsistent verdicts by objecting to the inconsistent verdicts before they become final. Even if the issue is not waived when the defendant objects, the double jeopardy prohibition only "prevents further deliberation on an acquittal only after that verdict is final." Muller, supra at 829; *see State v. Peters,* 855 S.W.2d 345, 347–48 (Mo.1993) (en banc) ("We hold that the first two verdicts the jury attempted to return were inconsistent because if the defendant was not guilty of assault, he cannot be guilty of armed criminal action based on assault. The court acted properly in sending the matter back to the jury for further consideration. In addition, we hold that the action of the court did not subject Peters to double jeopardy.")